UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
_____

BAY INSURANCE RISK RETENTION GROUP, INC.
as insurer of QUALITY CARRIERS, INC.

                                Plaintiff,                      **COMPLAINT**

    vs.

MARSH USA, INC.

                                Defendant.

_____


       Plaintiff, BAY INSURANCE RISK RETENTION GROUP INC. as insurer of QUALITY CARRIERS, INC. (hereinafter "PLAINTIFF"), by their attorneys Bennett Schechter Arcuri & Will, LLP, complaining of the defendant MARSH USA, INC. (hereinafter "MARSH"), respectfully allege as follows:

       1.     At all times hereinafter mentioned, BAY INSURANCE RISK RETENTION GROUP, INC. was and is a domestic business corporation duly organized and existing under and by virtue of the laws of the State of South Carolina, and was the insurer of QUALITY CARRIERS, INC., which was and is a domestic business corporation duly organized and existing under and by virtue of the laws of the State of Illinois, and is a specialty trucking fleet motor carrier doing business throughout the continental United States.  At all times relevant and on the date of the accident outlined herein, QUALITY CARRIERS, INC. was a wholly owned subsidiary of Quality Distribution, Inc.  Together, BAY INSURANCE RISK RETENTION

GROUP, INC. and QUALITY CARRIERS, INC. are referred to as "PLAINTIFF" throughout the remainder of this Complaint.

2.      At all times hereinafter mentioned, MARSH was and is a domestic business corporation duly organized and existing under and by virtue of the laws of the State of New York.

3.      Jurisdiction of this matter is proper under 28 U.S.C. § 1332(a) based on diversity of citizenship of the parties and that the matter in controversy exceeds the sum or value of $75,000.00, exclusive of interest and costs.

4.      Upon information, at all times hereinafter mentioned, MARSH was and is a large and diverse global insurance organization with a stated specialty of representing large trucking fleet risks throughout the continental United States.

5.      At all times hereinafter mentioned, MARSH was and is an insurance agent licensed in the Commonwealth of Pennsylvania.

6.      At all the times hereinafter mentioned, MARSH was and is an insurance broker licensed in the Commonwealth of Pennsylvania.

7.      At all times hereinafter mentioned, PLAINTIFF hired MARSH to procure insurance for PLAINTIFF's specialty trucking fleet (see 7/9/18 Broker of Record letter attached hereto as **Exhibit A**).  PLAINTIFF desired to limit or waive any Uninsured Motorist (UM) coverage or Underinsured Motorist coverage (UIM) in the particular states that allow such waiver, as PLAINTIFF has historically done.

2

8.    Upon information and belief, at all times hereinafter mentioned, MARSH was made aware by PLAINTIFF of PLAINTIFF's desire to limit or waive any UM and/or UIM coverage in the particular states that allow such waiver.

9.    At all times hereinafter mentioned, a policy procured by MARSH at the request of PLAINTIFF bearing Policy Number BI-MCL-100-2018 (hereinafter the "Policy") did insure PLAINTIFF with an effective date of September 15, 2018, through September 15, 2019, and the Policy of was in full force and effect throughout that time period.

10.    Upon information and belief, at all times relevant, in the weeks leading to the effective date of the Policy, MARSH worked with PLAINTIFF to produce an insurance application whereby MARSH would provide PLAINTIFF with relevant state-by-state Selection/Rejection forms for Uninsured and Underinsured Motorists coverage, whereby PLAINTIFF would complete the various state forms, fully rejecting UM and UIM coverages in states where they were allowed to do so, and by accepting only the minimum financial requirements for these coverages in states that would not permit a total rejection.

11.    Upon information and belief, at all times relevant, PLAINTIFF signed each Selection/Rejection form required by the various states regarding waiver and/or rejection of UM and/or UIM coverage and sent the various signed forms to MARSH for review and vetting prior to the issuance of the Policy.

12.    At all times relevant, the Commonwealth of Pennsylvania required PLAINTIFF to complete two distinct Selection/Rejection forms:  one for rejection of UM coverage, and another for rejection of UIM coverage.  MARSH provided both of these forms to PLAINTIFF. PLAINTIFF attempted to totally reject coverage for both UM and UIM coverage in the

Commonwealth of Pennsylvania, and returned the completed forms to MARSH for review and vetting prior to the issuance of the Policy.  Both forms are attached hereto as **Exhibit B**.

13.    Shortly after the Policy was issued, on December 6, 2018, Allant Brownt (hereinafter "BROWNT") was a tanker truck driver for a PLAINTIFF affiliate under the Policy when he was rear-ended by another vehicle on Interstate 80 in the Commonwealth of Pennsylvania.  BROWNT sued the at-fault driver and settled his case against the tortfeasor for a total of $265,000, the full extent of the two (2) available policies.

14.    Upon information and belief, at all times relevant, following the settlement for $265,000.00, BROWNT's counsel wrote a letter to PLAINTIFF and its insurer demanding UIM benefits for BROWNT.

15.    Upon information and belief, at all times relevant, after receiving said letter from BROWNT's counsel, a review of the Selection/Rejection forms provided by MARSH to PLAINTIFF (which PLAINTIFF completed and returned to MARSH for review and vetting prior to the issuance of the Policy) showed the UIM Selection/Rejection form for the Commonwealth of Pennsylvania was invalid due to it not being in compliance under Pennsylvania's strict construction of UIM forms, thus negating PLAINTIFF's attempt to reject UIM coverage under the Policy and reverting coverage to the Bodily Injury limits coverage of $2,000,000.

16.    BROWNT, through his attorney, filed a lawsuit seeking UIM benefits up to $2,000,000 (hereinafter the "BROWNT Lawsuit").  Attached hereto as **Exhibit C** is a copy of the BROWNT Lawsuit.  The BROWNT Lawsuit was settled by PLAINTIFF, with $675,000 being paid to BROWNT.

## <u>AS AND FOR A FIRST CAUSE OF ACTION AGAINST DEFENDANT</u>
## <u>(BREACH OF CONTRACT)</u>

17.    PLAINTIFF repeats and realleges each and every allegation contained in the preceding Paragraphs, with the same force and affect herein.

18.    Prior to the motor vehicle accident of December 6, 2018, PLAINTIFF engaged the services of MARSH to obtain, secure and/or procure, proper and adequate insurance based on the needs of PLAINTIFF.

19.    Prior to the motor vehicle accident of December 6, 2018, MARSH was hired to obtain, secure, or procure, adequate and appropriate insurance based on the specific needs of PLAINTIFF.

20.    PLAINTIFF explained to MARSH the nature of PLAINTIFF's trucking business, including, but not limited to, PLAINTIFF's need to waive Underinsured Motorist coverage in the Commonwealth of Pennsylvania.

21.    MARSH knew the nature of PLAINTIFF's trucking business, including, but not limited to, PLAINTIFF's need to waive Underinsured Motorist coverage in the Commonwealth of Pennsylvania.

22.    MARSH represented to PLAINTIFF that they understood the specific insurance needs and requirements for PLAINTIFF's trucking business, including, but not limited to, PLAINTIFF's need to waive Underinsured Motorist coverage in the Commonwealth of Pennsylvania.

23.    MARSH agreed to obtain, secure and/or procure proper, adequate and appropriate insurance based on the needs of PLAINTIFF's trucking business, including, but not limited to, PLAINTIFF's need to waive Underinsured Motorist coverage in the Commonwealth of Pennsylvania.

24.    MARSH obtained, secured, and/or procured the Policy, which was in full force and effect on December 6, 2018.

25.    At all relevant times, PLAINTIFF was under the impression, based upon the acts and representations of MARSH, that MARSH provided PLAINTIFF with proper, adequate and appropriate insurance that would protect PLAINTIFF's trucking business from any Underinsured Motorist coverage claims in the Commonwealth of Pennsylvania.

26.    At all relevant times prior to the BROWNT Lawsuit, MARSH failed to notify PLAINTIFF that they had failed or were unable to secure, obtain or procure the requested insurance coverage for PLAINTIFF's trucking business, including, but not limited to, PLAINTIFF's need to waive Underinsured Motorist coverage in the Commonwealth of Pennsylvania.

27.    At all times prior to the BROWNT Lawsuit, MARSH represented to PLAINTIFF that the requested insurance coverage was properly placed, procured, secured and/or obtained for PLAINTIFF's trucking business, including, but not limited to, PLAINTIFF's need to waive Underinsured Motorist coverage in the Commonwealth of Pennsylvania.

28.    At all times relevant prior to the BROWNT Lawsuit, MARSH breached its contract with PLAINTIFF to adequately perform insurance procurement services.

6

29.     At all times relevant prior to the BROWNT Lawsuit, MARSH breached its contract with PLAINTIFF by failing to properly place, procure, secure and/or obtain proper, adequate and appropriate insurance coverage for PLAINTIFF's trucking business that would protect against likely damage that could flow from the failure to waive Underinsured Motorist coverage in the Commonwealth of Pennsylvania.

30.     As a result of MARSH's breach of contract in failing to procure the requested insurance coverage for PLAINTIFF's trucking business, PLAINTIFF has been unable to recover for the loss resulting directly from the BROWNT Lawsuit.

31.     As a result of MARSH's breach of contract in procuring improper, inadequate, and inappropriate insurance for PLAINTIFF's trucking business, PLAINTIFF has been unable to recover the loss resulting directly from the BROWNT Lawsuit.

32.     As a result of MARSH's breach of contract, PLAINTIFF has been damaged in at least the sum of $675,000, together with attorneys' fees, disbursements, costs and applicable interest.

### AS AND FOR A SECOND CAUSE OF ACTION AGAINST DEFENDANT (NEGLIGENCE)

33.     PLAINTIFF repeats, reiterates and realleges each and every allegation contained herein, with the same force and effect.

34.     At all relevant times, MARSH had an affirmative duty to obtain proper, adequate and appropriate insurance for PLAINTIFF's trucking business that would protect against likely

damage that could flow from PLAINTIFF's failure to waive Underinsured Motorist coverage in the Commonwealth of Pennsylvania.

35.    At all relevant times, PLAINTIFF was under the impression, based on the acts and representations of MARSH, that PLAINTIFF was provided proper, adequate and appropriate insurance for PLAINTIFF's trucking business that would protect against likely damage that could flow from PLAINTIFF's failure to waive Underinsured Motorist coverage in the Commonwealth of Pennsylvania.

36.    At all relevant times prior to the BROWNT Lawsuit, MARSH negligently performed their insurance procurement services for PLAINTIFF.

37.    As a result of the negligence of MARSH, the Policy MARSH obtained for PLAINTIFF's insurance needs was ill-suited for the purpose of insuring PLAINTIFF's trucking business and did not protect against likely damage that could flow from PLAINTIFF's failure to waive Underinsured Motorist coverage in the Commonwealth of Pennsylvania.

38.    At all times prior to the BROWNT Lawsuit, MARSH negligently represented to PLAINTIFF that proper, adequate, and appropriate insurance coverage was in place for PLAINTIFF's trucking business that would protect PLAINTIFF from likely damage that could flow from the failure to waive Underinsured Motorist coverage in the Commonwealth of Pennsylvania.

39.    At all times prior to the BROWNT Lawsuit, MARSH failed to notify PLAINTIFF that they were unable to obtain, secure or procure proper, adequate, and appropriate insurance for PLAINTIFF's trucking business that would protect PLAINTIFF against likely damage that could

flow from the failure to waive Underinsured Motorist coverage in the Commonwealth of Pennsylvania.

40.    As a result of the foregoing negligence of MARSH, PLAINTIFF has been unable to recover from the loss relating directly to the BROWNT Lawsuit.

41.    As a result of the foregoing negligence of MARSH, PLAINTIFF has been damaged in at least the sum of $675,000, plus attorney fees, costs, disbursements, and applicable interest.

**WHEREFORE,** Plaintiff BAY INSURANCE RISK RETENTION GROUP, INC. as insurer of QUALITY CARRIERS, INC., demands judgement against MARSH USA, INC., in at least the sum of $675,000 plus any applicable statutory interest, and all expenses, attorneys' fees, costs and disbursements of this action.


Dated:  Buffalo, New York
        December 18, 2023


                        /s/ Daniel T. Hunter
                        _____
                        Daniel T. Hunter, Esq.
                        BENNETT SCHECTER ARCURI & WILL
                        Attorneys for Plaintiff BAY INSURANCE RISK
                        RETENTION GROUP, INC. as insurer of QUALITY
                        CARRIERS, INC.
                        701 Seneca St, Suite 609
                        Buffalo, New York 14210
                        (716) 242-8100